## UNITED PROFIT SHARING CORPORA-
## TION v. UNITED STATES.
### No. F–93.

Court of Claims.
June 16, 1930.

Edward F. Spitz, of New York City, and M. Carter Hall, of Richmond, Va. (Carlin, Carlin & Hall, of Washington, D. C., on the brief), for plaintiff.

J. H. Sheppard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

This case having been heard by the Court of Claims, the court, upon the evidence adduced, makes the following

### Special Findings of Fact.

I. At all times herein mentioned plaintiff was and still is a corporation, organized and existing under the laws of the state of Delaware, with its office and principal place of business at 44 West Eighteenth street, in the borough of Manhattan, city of New York, state of New York, engaged in the business of furnishing a premium service to various manufacturers of so-called package goods in the United States, including the exchanging of various articles of merchandise for premium coupons, certificates, or other similar tokens, as hereinafter set forth.

II. Plaintiff, during the period October 1, 1920, and July 2, 1924, inclusive, in the regular and ordinary course of its business, furnished to manufacturers of so-called package goods premium coupons to be attached to or packed with their respective commodities, which coupons entitled the purchasers of the goods to secure therewith from the plaintiff various articles in accordance with the terms of premium catalogues also issued by plaintiff. During the period aforesaid, plaintiff issued and delivered to the holders of premium coupons various articles of merchandise, described in its catalogue, in exchange for the said coupons.

III. The premium coupons were issued by plaintiff as follows:

Plaintiff entered into contracts with various manufacturers of so-called package goods, such as chewing gum, soap, oleomargarine, and the like, pursuant to which it furnished coupons to said manufacturers. The coupons were attached to or packed with the said package goods, and through the wholesaler and retailer the packages and premium coupons eventually came to the ultimate consumer.

The contracts obligated the plaintiff to redeem the coupons when surrendered by the said ultimate consumers in accordance with the terms of plaintiff's catalogues.

IV. In the conduct of its business plaintiff employed two forms of contract. One contract provided for the furnishing of coupons and the redemption thereof for the prescribed arbitrary charge of $2.50 per 1,000 coupons furnished. The other contract was more flexible and measured the charge for the service by the number of coupons surrendered for redemption; the charge being $3 per 1,000 coupons redeemed.

During the period in suit, about 99 per centum of plaintiff's business with manufacturers was conducted under the latter form of contract. Under the first form of contract plaintiff sold its coupons to merchants—such as department or grocery stores—to be given to their patrons, and these coupons were redeemed in the same manner as those furnished to manufacturers and constituted about one per centum of plaintiff's business.

V. Plaintiff delivered various articles of merchandise in accordance with the terms of its premium catalogues to divers consumers of its customers' products, upon the surrender to plaintiff by said consumers of its coupons for redemption. Approximately 25 per cent. of these premiums consisted of articles commonly or commercially known as jewelry. It was upon said articles that the entire tax here involved was assessed and collected. None of the articles listed in the premium catalogues were exchanged by plaintiff for cash, but they were and could only be obtained from plaintiff in exchange for premium coupons. It was expressly agreed between plaintiff and those from whom it purchased said premium articles that the latter should be given by plaintiff solely in redemption of said coupons, and under no consideration exchanged by plaintiff for cash.

Plaintiff did not manufacture or produce any of its premium articles, but purchased the same for its business. Said premium articles were issued by the plaintiff only to the holder of coupons, and not for resale.

VI. The coupons furnished by the plaintiff to the manufacturers were distributed by said manufacturers under their own names as "issuer"; and said coupons stated thereon that the "Issuer is responsible for redemption." All coupons had a cash redemption value according to their denominations, viz., a No. 1 coupon had a cash value of $\frac{1}{5}$ cent and a No. 5 coupon had a cash value of 1 cent. These cash values were printed upon the face of the coupons. Plaintiff redeemed the said coupons for cash on the aforesaid basis where the holders thereof desired cash instead of premium articles.

VII. Plaintiff's relation with said manufacturers, with respect to its coupons, was referred to and designated in its contracts as that of "redemption agent," and the plaintiff was similarly referred to and designated by said manufacturers on the premium coupons as "our redemption agent." Plaintiff was likewise referred to and designated in and on the premium catalogue as "redemption agent"; and plaintiff's sole relation to said manufacturers, and to said consumers of said manufacturers' products, in connection with the redemption of said coupons, was that of redemption agent of said manufacturers.

VIII. The coupons were presented to plaintiff for redemption, either through the mails, at its mail-order redemption department in New York City, or at its 236 premium redemption stations, maintained by plaintiff throughout the United States. After said coupons were redeemed by plaintiff, they were counted and tabulated and then returned to said manufacturers with a bill for the amount of the coupons redeemed.

During the period in suit the plaintiff issued in the manner heretofore stated a total number of 1,209,062,084 coupons, and its gross income amounted to $7,501,072.71. Of this sum 10 per cent. to 15 per cent. represented transactions involving articles commonly or commercially known as jewelry and 8 per cent. represented net profit.

IX. The manufacturers using plaintiff's premium coupons sold their respective products in competition with similar products of other manufacturers with which no premium coupons were given.

Each of said manufacturers determined for itself the number and denominations of coupons inclosed within the packages of its respective products; and coupons of the same denomination were sometimes inclosed by some manufacturers with packages of goods selling at 5 cents and by others with packages selling at 10 cents.

None of the manufacturers sold any premium coupons for cash, but issued them only inclosed within or attached to the packages of their respective products.

X. Premium coupons were frequently not presented to plaintiff for redemption until the lapse of a considerable interval after their issuance by said manufacturers, and coupons were and are redeemed by plaintiff as late as ten or twelve years after said issuance.

In such instances the manufacturers, under their contracts with the plaintiff, pay the plaintiff for the redemption of the premium coupons after the termination of the contracts.

XI. The premium catalogues issued by plaintiff contained the following conditions and regulations:

"All United Profit-Sharing coupons are subject to the following rights and conditions, by which each of the persons to whom they are issued by accepting the same agrees to be bound.

"For the purpose of redeeming such coupons, this corporation has been appointed sole agent by manufacturers packing their own United Profit-Sharing coupons with merchandise sold by them. United Profit-Sharing coupons packed by these various manufacturers may be combined for the purpose of redeeming them for articles listed in this catalogue. This plan affords the manufacturers an opportunity to give you high-class articles at minimum expense, and enables you to secure quickly the number of coupons necessary to obtain the article you desire. * * *

"The right is reserved to limit the number of coupons which will be accepted for redemption from any person, at any time, and to limit the number of articles in this catalogue or otherwise advertised, whether of the same kind or of different kinds, which will be distributed at any time to any person. * * *

"This corporation will redeem United Profit-Sharing coupons in cash only, instead of merchandise, when issued in any State or locality where redemption in merchandise is prohibited, or requires payment of a tax or license not required for cash redemption, or where burdensome regulations affect merchandise redemptions and not cash redemptions. If, in any State or locality, said coupons, whether redeemable in merchandise or cash, are prohibited, they become null and void therein, or if taxed or regulated become null and void at the option of the corporation.

"The issuance of United Profit-Sharing coupons may be discontinued and their redemption refused by this corporation at any time, without notice, if any law or ordinance is passed or adopted, or if any decision, judgment, or order is made or entered prohibiting, taxing, limiting, or affecting the same, or imposing conditions which may be deemed onerous. Such requirements may be imposed without notice, for the redemption of all or any coupons as may be deemed proper to meet the requirements of any law or ordinance, or any decision, judgment, or order now in force, or which may hereafter be enacted, made, or entered affecting these coupons in any way. The corporation may place any mark upon, take up, cancel, or refuse to redeem any and all coupons presented for redemption by anyone who fails to satisfy any of our representatives that he is lawfully entitled to the redemption thereof."

XII. Said catalogues, on page 1, under the heading of "Important Notice," contained the following:

"We reserve the right to discontinue, without notice, any or all articles listed in this catalog, or increase the redemption value of any and all such articles; also the right to collect any and all taxes, revenues, etc., which may be levied, assessed, or required to be collected and paid on any or all such articles or the value thereof."

XIII. The premium coupons issued by plaintiff contained the following recital:

"This coupon is redeemable by issuer at any United Profit-Sharing redemption station, according to the terms of catalogue of United Profit-Sharing Corporation, our redemption agent, in effect at time of redemption, except that in any State or locality where redemption in goods is prohibited or requires payment of license or tax, not required for cash redemption, this coupon will be redeemed in cash only, and is void wherever prohibited.

"Send for free catalog to United Profit-Sharing Corporation, New York, N. Y."

XIV. In conformity with article 5 of Regulations 48, promulgated by the Commissioner of Internal Revenue, the collector of internal revenue required plaintiff to make monthly returns, under oath, as provided by section 905 of the Revenue Act of 1918 and 905(b) of the Revenue Act of 1921 (40 Stat. 1124; 42 Stat. 293), of all articles commonly or commercially known as jewelry as described in said sections 905 and 905(a), delivered or shipped by plaintiff, in exchange for its premium coupons, and to pay the tax-

es imposed upon such articles under the provisions of said sections 905 and 905(a), on account of the delivery or shipment by plaintiff of said articles commonly or commercially known as jewelry in exchange or return for such coupons, as aforesaid, which said taxes were based on the fair market value of the articles of jewelry at the time they were exchanged for said coupons.

XV. The taxes paid by plaintiff during the period hereinafter mentioned, to wit, between October 1, 1920, and July 2, 1924, pursuant to said regulation of the Commissioner of Internal Revenue, and as a result of said action of said collector of internal revenue for said second district of New York, were as follows:

November 30, 1920, to March 31, 1922 ....................... $ 7,973.81
April 27, 1922, to July 31, 1923.. 5,943.65
August 31, 1923, to July 31, 1924 5,050.72
                                  _____
Total ................... $18,968.18

XVI. On or about September 12, 1923, and before the expiration of four years from the respective payment dates of any of said taxes, plaintiff filed with the collector of internal revenue for said Second district of New York a claim for refund for said sum of $5,943.65, collected as aforesaid, for the period from April 27, 1922, to July 31, 1923; said claim for refund being in all respects complete, regular, and in accordance with the law and regulations. Evidence was submitted in support of said claim, and on or about March 4, 1924, the Commissioner of Internal Revenue rejected said claim for refund of said taxes in a letter addressed to plaintiff, which reads as follows:

"Treasury Department,
"Office of Commissioner of Internal Revenue,
"Washington, March 4, 1924.
"United Profit-Sharing Corporation
"(c/o Mr. George P. Brauburger),
"44 West 18th Street, New York, N. Y.
"Gentlemen:
"Reference is made to your claim for refund of $5,943.65, representing miscellaneous excise taxes paid for the period from March, 1922, to June, 1923.

"It appears from the evidence submitted that the amount claimed represents taxes erroneously paid on various articles of jewelry, fountain pens, and other articles ornamented and fitted with precious metals which were issued to purchasers in exchange for coupons and certificates given with each sale of merchandise.

"The claim is, however, rejected for the reason that it is held that the above-mentioned articles given in exchange for coupons and certificates are sold for consumption or use, within the meaning of section 905 of the revenue acts of 1918 and 1921, and therefore liable to the tax imposed by that section on the fair market value of the premiums at the time of the exchange.

"Respectfully,

"D. H. Blair, Commissioner."

Additional evidence was submitted in support of said claim for refund of said $5,943.-65 taxes, and thereafter, on or about December 24, 1925, the Commissioner of Internal Revenue sustained the rejection contained in his letter of March 4, 1924, by a letter addressed to plaintiff which reads as follows:

"Treasury Department,

"Office of Commissioner of Internal Revenue,
    "Washington, December 24, 1925.
"Carlin, Carlin & Hall,
    "1127 Munsey Building,
        Washington, D. C.
"Gentlemen:

"Receipt is acknowledged of the additional evidence submitted in support of the claim filed by United Profit-Sharing Corporation, 44 West 18th Street, New York, N. Y., for refund of $5,943.65, representing miscellaneous excise tax paid for the period March 1, 1922, to June 30, 1923, in which it was requested that the claim be given further consideration.

"The claim was rejected in full under date of March 4, 1924, since it was held that taxes paid on various articles of jewelry, fountain pens, and other articles ornamented and fitted with precious metals which were issued to purchasers in exchange for coupons and certificates given with each sale of merchandise were properly due and paid since the above-mentioned articles are sold for consumption or use within the meaning of section 905 of the Revenue Acts of 1918 and 1921 and therefore subject to tax.

"You contend that the regulations are in error in holding premium transactions to be sales, that the claimant is not a dealer in jewelry, and that there is no warrant for basing the tax on the fair market value of the articles.

"It is held that since the premium certificates used by claimant have a recognized cash value, it seems clear that the exchange of a specified number of such certificates for an article of jewelry constitutes, in effect, a sale of the article. It also seems clear, since

admittedly claimant does a large volume of business in jewelry premiums for ultimate profit, that claimant is properly classed as a dealer in jewelry. As to the basis of the tax, the fair market value of the premium is, in the circumstances, the best criterion of the amount paid therefor by the certificate holder. The tax was paid on this basis without protest.

"In accordance with the above, the action taken on the claim under date of March 4, 1924, is correct and is sustained.

"Respectfully,

"C. R. Nash, Commissioner."

XVII. On or about November 26, 1924, and before the expiration of four years from the respective payment dates of any of said taxes, plaintiff filed with said collector of internal revenue for said second district of New York, a claim for refund of said sums of $7,973.81 and $5,050.72 collected, as aforesaid, for the periods from November 30, 1920, to March 31, 1922, and August 31, 1923, to July 31, 1924, respectively, said claims for refund being in all respects complete, regular, and in accordance with the law and regulations. Evidence was submitted in support of said claims for refund; and on or about January 6th, 1926, the Commissioner of Internal Revenue rejected said claim for refund of said taxes in said sum of $7,973.81, in a letter which reads as follows:

"Treasury Department,

"Office of Commissioner of Internal Revenue,
    "Washington, January 6, 1926.
"United Profit-Sharing Corporation,
    "44 West 18th Street, New York, N. Y.
"Gentlemen:

"Reference is made to your claim for refund of $7,973.81, representing miscellaneous excise taxes paid for the period December, 1920, to April, 1922, inclusive.

"It has been noted you contend that the amount claimed represents taxes erroneously paid on various articles of jewelry, fountain pens, and other articles ornamented and fitted with precious metals which were issued to purchasers in exchange for coupons and certificates given with each sale of merchandise.

"It has been held, however, that the above-mentioned articles given in exchange for coupons and certificates are sold for consumption or use within the meaning of section 905 of the Revenue Acts of 1918 and 1921 and are therefore liable to the tax imposed by that section of the law on the fair market value of the premiums at the time of the exchange.

"Therefore, as the tax involved in this claim was computed on the basis of the fair market value of the premiums at the time of the exchange, the claim is accordingly rejected in full.

"Respectfully,

"D. H. Blair, Commissioner."

On or about January 27, 1926, the Commissioner of Internal Revenue rejected the aforesaid claim for refund of taxes in the sum of $5,050.72, in a letter addressed to plaintiff, which reads as follows:

"Treasury Department,

"Office of Commissioner of Internal Revenue,

"Washington, January 7, 1926.

"United Profit-Sharing Corporation,

"44 West 18th Street, New York, N. Y.

"Gentlemen:

"Reference is made to your claim for refund of $5,050.72, representing miscellaneous excise taxes paid for the period September, 1923, to August, 1924, inclusive.

"It has been noted you contend that the amount claimed represents taxes erroneously paid on various articles of jewelry, fountain pens, and other articles ornamented and fitted with precious metals which were issued to purchasers in exchange for coupons and certificates given with each sale of merchandise.

"It has been held, however, that the above-mentioned articles given in exchange for coupons and certificates are sold for consumption or use within the meaning of section 905 of the Revenue Act of 1921 and are therefore liable to the tax imposed by that section of the law on the fair market value of the premiums at the time of the exchange.

"Therefore, as the tax involved in this claim was computed on the basis of the fair market value of the premiums at the time of the exchange, the claim is accordingly rejected in full.

"Respectfully,

"D. H. Blair, Commissioner."

XVIII. No action other than the filing of said appeals by plaintiff to the Commissioner of Internal Revenue, and the said disallowance on March 4, 1924, of said claim for refund of $5,943.65 of said taxes, and the said disallowance on January 6, 1926, of said claim for refund of $7,973.81, and the said disallowance on January 7, 1926, of said claim for refund of $5,050.72 of said taxes, has been had on this claim.

XIX. The plaintiff is the sole owner of this claim and the only person interested therein; and no assignment or transfer of this claim or any part thereof, or interest therein, has been made.

XX. The plaintiff has at all times borne true allegiance to the government of the United States, and has not in any way voluntarily aided, abetted, or given encouragement to rebellion against the said government.

### Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court decides, as a conclusion of law, that the plaintiff is not entitled to recover and its petition is therefore dismissed.

Judgment is rendered against plaintiff for the cost of printing the record herein, the amount thereof to be ascertained by the clerk and collected by him according to law.

See case of Colgate & Co. v. United States, 66 Ct. Cl. 510.