## UNITED CIGAR STORES CO. OF AMERICA v. UNITED STATES.

### No. F–102.

Court of Claims.
June 1, 1931.

Edward F. Spitz, of New York City (Sol. M. Stroock, of New York City, and Carlin, Carlin & Hall, of Washington, D. C., on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

This case is before the court upon defendant's demurrer to plaintiff's petition. Plaintiff is a New Jersey corporation engaged in selling, at retail, cigars, cigarettes, tobacco, and other merchandise through stores and agencies located in the principal cities of the United States. Between October 1, 1920, and June 30, 1924, in its regular course of business, the plaintiff delivered to each of its customers purchasing articles of merchandise from it premium coupons or tokens which entitled the holder or holders thereof to secure certain premium articles listed in a premium catalogue issued by the plaintiff. The method pursued is alleged in the petition as follows:

Upon the making of all sales of cigars, cigarettes, tobacco, and other merchandise sold by plaintiff at retail and receipt of the price therefor by plaintiff, coupons and certificates in various denominations having an approximate relation to the amounts of such sales are offered by plaintiff to its customers, without charge, as an inducement to the purchase of its merchandise.

Upon presentation of, and in exchange for, said coupons and certificates accepted by its customers, plaintiff, during the period hereinbefore mentioned, delivered various articles of merchandise, in accordance with the terms of its catalogue. A portion of such premium articles, approximating 25 per cent. thereof, consisted of articles commonly or commercially known as jewelry. None of such articles listed in said premium catalogue were sold or offered for sale by plaintiff, and they were and could only be obtained from plaintiff by its customers in exchange for its premium tokens, as hereinbefore stated.

The petition then continues to set forth in detail the imposition, collection, and payment under protest of excise taxes exacted by the Commissioner of Internal Revenue under section 905 of the Revenue Act of 1918 (40 Stat. 1124), and section 905 of the Revenue Act of 1921, both acts containing substantially similar terms. Section 905 of the revenue act of 1921 (42 Stat. 227, 293) provides as follows: "Sec. 905 (a) That on and after January 1, 1922, there shall be levied, assessed, collected, and paid (in lieu of the tax imposed by section 905 of the Revenue Act of 1918) upon all articles commonly or commercially known as jewelry, whether real or imitation; pearls, precious and semiprecious stones, and imitations thereof; articles made of, or ornamented, mounted or fitted with, precious metals or imitations thereof or ivory (not including surgical instruments, eyeglasses, and spectacles); watches; clocks; opera glasses; lorgnettes; marine glasses; field glasses; and binoculars; upon any of the above when sold by or for a dealer or his estate for consumption or use, a tax equivalent to 5 per centum of the price for which so sold."

The adopted and promulgated regulations of the commissioner of May 5, 1919, approved by the Secretary of the Treasury, are set forth as follows: "Art. 5. *Giving of premiums.*—The giving of so-called 'premiums' in return for wrappers, labels, coupons, trading stamps, or other scrip delivered or sold in connection with the sale of a commodity is a sale within the meaning of section 902 and section 905 if the premium is

within the class of articles enumerated in those sections. In such cases the tax attaches at the time title in the premium passes to the person receiving it in exchange for such scrip, and is to be computed on the fair market value of the premium at such time."

On or about July 17, 1919, said article 5 was amended by adding at the end thereof the following: "No tax attaches to the gift of an article which if sold would be taxable. Premiums given in return for wrappers, labels, coupons, trading stamps, or other scrip are not considered as gifts."

Said regulation as amended was in force and effect until July 3, 1924, and during the period hereinbefore referred to.

Under the taxing acts and the regulations plaintiff paid on the dates stated a total excise tax of $135,384.83. Claims for refund of the taxes collected, accompanied by arguments therefor, were seasonably made and denied. No jurisdictional issue is involved. The remaining allegations of the petition set forth a contention that said taxes were illegally and erroneously collected by the commissioner without warrant or authority in law, and in violation of section 1 of article 1 and clause 1 of section 8 of article 1 of the Constitution of the United States, for the following reasons:

(a) In that the power of taxation being lodged solely in Congress by article 1 of the Constitution, the Commissioner of Internal Revenue had no power to supply by regulation the failure of Congress to provide or indicate, in section 905 or elsewhere, any manner or method of levying, assessing, or collecting the tax where jewelry articles are issued as premiums for coupons.

(b) In that said section of said acts imposed a tax upon said articles commonly or commercially known as jewelry, when sold by or for a dealer or his estate for consumption or use; and in that plaintiff was and is not a dealer, or the estate thereof, in said so-called jewelry articles, within the true intent and meaning of said acts.

(c) In that plaintiff's issuance of said premium articles in exchange or return for said premium tokens, in pursuance of contracts previously entered into by plaintiff on its sales of tobacco products and other merchandise, frequently at intervals of a number of years prior to the presentation of said premium tokens for redemption, when plaintiff was compelled to pay said taxes thereon as aforesaid, were not sales by plaintiff of said so-called jewelry articles for consumption or use, within the true intent and meaning of said acts.

(d) In that when said jewelry or other premium articles were issued by plaintiff in exchange or return for said premium tokens, plaintiff was performing an obligation undertaken by it in connection with such contracts of sale previously entered into by it, on which all taxes required to be paid under said acts, had already been paid by it in full.

(e) In that said section of said acts did not fix or state the amount of the tax to be paid on transactions where said so-called jewelry articles are not sold for any price in money or otherwise but are delivered or issued in exchange or return for tokens only.

(f) In that the Commissioner of Internal Revenue, in promulgating the said regulation, pursuant to which plaintiff was compelled to pay said taxes as aforesaid, was not acting within the authority conferred by either section 1309 of said act of 1918 (40 Stat. 1143), or section 1303 of said act of 1921 (42 Stat. 309), to make all needful rules and regulations for the enforcement of the respective provisions thereof.

The conclusion prays for a judgment for $135,384.83 and interest thereon as provided for by law.

The plaintiff apparently concedes that, with the exception of noted differences, this case is similar to Colgate & Co. v. United States, 66 Ct. Cl. 510, and United Profit Sharing Corporation Case, dismissed by this court on June 16, 1930 (43 F.(2d) 266, 70 Ct. Cl. 788), petition for writ of certiorari denied by the Supreme Court October 27, 1930, 51 S. Ct. 84, 75 L. Ed. ——. The differences relied upon from the standpoint of facts are said by the plaintiff to reside in the fact that in the United Profit Sharing Corporation Case, supra, the coupons were issued for *manufacturers* to which the corporation had contracted to furnish a premium service, and in the Colgate Case the plaintiff was likewise a manufacturer issuing coupons to ultimate consumers of the plaintiff's merchandise sold by retailers to whom the plaintiff, a wholesaler, sold the merchandise. We cannot discover any vital distinction, in so far as the tax liability of the plaintiff is concerned, between this case and the Colgate and United Profit Sharing Cases. The new issue alleged to appear in the present case finds expression in a contention that Congress did not in the revenue acts involved provide a tax with respect to jewelry issued for coupons; that the tax levied by section 905 of the Rev-

enue Acts of 1918 and 1921 was fixed at the equivalent of 5 per centum of the price for which said articles were sold, and that no such price is existent when jewelry is issued in return for coupons issued to customers of the plaintiff as alleged in the petition; and that the commissioner, in adopting and promulgating regulations by which the plaintiff's tax liability in the premises is to be fixed in accord with the market value of the articles sold, invaded the domain and jurisdiction of Congress, which alone possesses power and authority to legislate and to lay and collect taxes. Section 1 of article 1, and clause 1, section 8, of art. 1, of the Constitution.

One argument to sustain the above contention is predicated upon an allegation in the petition that the plaintiff's coupons are offered to its customers "without charge" as an inducement to purchase its merchandise, and inasmuch as the demurrer admits the allegations of the petition as true this is alone sufficient to warrant the court in overruling it. The gravamen of the case is, and the contentions advanced by the plaintiffs in all similar cases have been, that the issue and exchange of coupons for articles of jewelry did not comprise a sale. The allegation "without charge" is a conclusion, one vital factor to be determined from the facts alleged, and we need but state the rule that the demurrer admits only such facts as are well pleaded. The plaintiff's case is dependent upon a solution of the question as to whether the alleged transactions are sales for a price and the price is ascertainable and fixed, and seemingly no serious controversy may obtain that if they are, the taxing acts apply, and if they are not, the transaction does not fall within the acts. If the commissioner's regulations as to the ascertainment of the plaintiff's tax liability impose a tax contrary to the revenue laws the plaintiff is entitled to relief. The defendant does not challenge the plaintiff's contention in this respect, and it could not be challenged in any event. Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267. As we view it, the sole issue present and for determination in this case is precisely similar to the issues presented upon a similar state of facts in both the Colgate and United Profit Sharing Cases, supra. In reference to the ascertainment of price by the commissioner, upon the basis of market value of the articles we found to be sold by a dealer in jewelry, this court said: "A final impediment to the collection of the tax is said by the plaintiff to reside in the fact that the price for which the articles of jewelry are exchanged for coupons is not ascertainable, and hence the regulations for the collection of the tax are contrary to the wording and intent of the law. To so contend is the equivalent of asserting that if a dealer in jewelry establishes a method of selling his merchandise, which method obscures the ready ascertainment of the selling price of the article sold, he may escape the revenue laws and carry on free from this burden. In other words, he may indirectly accomplish a result which he may not directly do. The statute uses the words 'a tax equivalent to .5 per centum of the price for which so sold.' Manifestly, the commissioner in the administration of the revenue laws is not bound to accept the return of the dealer as to price. Investigations and audit may be made of the dealer's transactions to ascertain the verity of the returns, or reasonable regulations, lawful, of course, and conducive to the correct administration of the law, may be promulgated. Tested by the commissioner's authority and the extent of his power under the statute, we are unable to find the difficulties which the plaintiff so vigorously protests as present. The plaintiff, in fixing the value of jewelry premiums, predicates their acquisition upon a sufficient number of redeemed coupons to cover not only the market value of the article transferred, but adds thereto the proportionate cost of overhead incurred in the conduct of the business, and thereby really obtains an estimated price somewhat in excess of the market value of the jewelry. The price thus fixed by the plaintiff embraces within its computation elements of uncertainty and estimates, and may or may not reflect stable and precise return for the articles sold. The commissioner, on the other hand, resorts to a basis easily ascertainable and obviously to the advantage of the taxpayer in that estimates and pro rata apportionments of overhead, etc., are absent." Colgate & Co. v. United States, 66 Ct. Cl. 510, 524.

We think the demurrer should be sustained and the petition dismissed. It is so ordered.